# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| MIDWEST FAMILY MUTUAL INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>JUSTKYLE, INC., AND NICHOLAS GUETTLER,<br><br>Defendants. | Civil No. 17-1632 (JRT/BRT)<br><br>**MEMORANDUM OPINION AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT** |

Michael T. Burke, **LIND JENSEN SULLIVAN & PETERSON, PA**, 901 Marquette Avenue South, Suite 1300, Minneapolis, MN 55402, for plaintiff.

Mark P. Essling, 34030 Kale Avenue, North Branch, MN 55056, for defendants.

The question presented in this case sounds something like a bad riddle: "When is an asbestos case not an asbestos case?" The punchline sounds even worse: When a portion of the property damage alleged against a third-party defendant in the underlying action is not inarguably and clearly a natural and reasonable consequence of the existence of, or presence of, asbestos. Because that is the case in this case, the Court will deny the Motion for Summary Judgment brought by Plaintiff Midwest Family Mutual Insurance Company ("Midwest Family") in this declaratory judgment action against insured Defendants Justkyle, Inc. ("Justkyle"), and Nicholas Guettler.

**BACKGROUND**

Midwest Family brings this declaratory judgment action to determine whether it is obligated to defend or indemnify its insured, Justkyle, for claims brought against that company in Minnesota state court. (Compl. ¶ 1, May 17, 2017, Docket No. 1.)

Midwest Family is an Iowa corporation authorized to transact business in Minnesota. (*Id.* ¶ 3.) Guettler is the owner and sole employee of Justkyle, a Minnesota corporation; Midwest Family insures both parties. (*Id.* ¶¶ 1, 4-5, 7; Guettler Ans. ¶¶ 3, 6, July 31, 2017, Docket No. 15.) Alleging an amount in controversy greater than $75,000, Midwest Family properly states that the Court has diversity jurisdiction over this case. (*See* Compl. ¶¶ 2, 6.)

Homeowners Eric and Barbara Grutzner brought the underlying state-court action against contractor M.A. Peterson Designbuild, Inc., and Mark Peterson (collectively, "M.A. Peterson") in 2016. (Compl. ¶ 8, Ex. C ("Grutzner Compl."), May 17, 2017, Docket No. 1-3.) M.A. Peterson in turn filed third-party claims against Justkyle and another contractor, UMR Geothermal, Inc., for contribution and indemnification. (Compl. ¶ 10, Ex. D ("M.A. Peterson Compl."), May 17, 2017, Docket No. 1-4.)

## I. THE UNDERLYING ACTION

Eric and Barbara Grutzner purchased their Inver Grove Heights home in 2005. (Grutzner Compl. ¶ 6.) The house was built in 1956. (*Id.* ¶ 7.) The Grutzners contacted their long-time friend, Mark Peterson, to get his professional opinion as to whether they should remodel the house or tear it down and rebuild. (*Id.* ¶¶ 9-10.) In 2006, Peterson

recommended that they hire his firm, M.A. Peterson, to remodel it. (*Id.* ¶¶ 17, 24.) The Grutzners did so, entering into two contracts – one governing demolition and the other construction. (*Id.* ¶¶ 25, 28.) Both contracts contained a provision stating that M.A. Peterson would stop work and immediately notify the Grutzners if the contractor encountered any "hazardous substances." (*Id.* ¶¶ 26, 29.)

The 2006 remodel focused on the main floor, but the Grutzners allege that it also involved work in the floors, walls, and basement – areas that contained asbestos. (*Compare id.* ¶¶ 39, 41, 44, *with* M.A. Peterson Compl. ¶¶ 8, 27.) According to the Grutzners, Peterson conceded in the state-court litigation that he discovered asbestos during the course of the 2006 remodel, and that he understood then that the asbestos was a "hazardous substance" under the terms of the contracts. (Grutzner Compl. ¶¶ 46, 57.) Instead of telling the Grutzners about the asbestos, however, M.A. Peterson allegedly concealed its existence and completed the project. (*Id.* ¶¶ 50, 52.)

The Grutzers say that they were unaware of the existence of asbestos in their home until 2016, when they hired Justkyle (which is really just Guettler) to remodel the lower level. (*See id.* ¶ 54.) According to Guettler, he suspected there was asbestos in the floor titles before he began demolition. (Aff. of Nicholas Guettler ("Guettler Aff.") ¶ 4, Jan. 16, 2018, Docket No. 40.) He had the tiles removed and abated. (Guettler Aff. ¶ 7, Ex. A ("Guettler Dep.") 29:12-24.) At one point in the project, Guettler pulled down a piece of ceiling tile with his bare hands, and asbestos insulation fell from around pipes that he believed had been accessed by M.A. Peterson and UMR Geothermal, a contractor who had done work in the home in 2015. (Guettler Dep. 35:25-37:25.) Guettler notified the

Grutzners, who notified Peterson. (Grutzner Compl. ¶¶ 55-56.) The Grutzners say Peterson came to the home, acknowledged the asbestos, apologized, and said that M.A. Peterson would take responsibility for the matter – a promise that Peterson promptly reneged. (*Id.* ¶¶ 57-59.) The Grutzners subsequently filed suit in state court, bringing five claims: Breach of Contracts, Negligence, Breach of Warranty, Breach of Fiduciary Duty, and Fraud by Omission. (*Id.* ¶¶ 60-84.)

M.A. Peterson denies all liability, including denying failing to notify the Grutzners about the asbestos or disturbing the asbestos. (M.A. Peterson Compl. ¶ 21.) M.A. Peterson specifically denies doing its remodeling work in the impacted area of the home. (*Id.* ¶ 27.) M.A. Peterson instead points the finger at Justkyle and UMR Geothermal. (*Id.* ¶¶ 10-13, 22.) Specifically, Peterson alleges that:

> 24. To the extent Plaintiffs have been damaged as alleged in the Amended Complaint, such damages were caused by the negligence, breach of contract, breach of warranty, or other acts, omissions, or fault of Third-Party Defendants JustKyle, Inc. or UMR Geothermal, Inc., or both of them.
>
> 25. Third-Party Defendants performed construction and remodeling work in the lower-level areas of the Home – the exact same areas where the allegedly disturbed asbestos materials were found – long after M.A. Peterson performed its remodeling work in other areas of the Home.
>
> 26. To the extent any asbestos materials were disturbed in the Home, Third-party Defendants are responsible for disturbing those materials.
>
> 27. M.A. Peterson did not perform its remodeling work in the allegedly impacted areas.

> 28. To the extent Third-Party Plaintiffs are found liable to
>     the Plaintiffs, Third-Party Plaintiffs are entitled to
>     contribution and/or indemnification from Third-Party
>     Defendants.

(*Id.* ¶¶ 24-28.) M.A. Peterson did not identify Guettler as the owner or sole employee of Justkyle and did not name him as a third-party defendant; thus, as relevant here, it brought claims solely against Justkyle. (*See generally id.*)

## II. THE PRESENT ACTION

Midwest Family brings this case in federal court pursuant to the Declaratory Judgment Act. *See* 28 U.S.C. § 2201.

Midwest Family issued an "Artisan Contractor Policy" ("the policy") insuring "Nick Guettler DBA: Justkyle Inc." from September 28, 2015, through September 28, 2016, and subsequently renewed through September 28, 2017. (Compl. ¶ 7, Ex. A ("2015-2016 Policy") at 1, May 17, 2017, Docket No. 1-1; Compl. ¶ 7, Ex. B ("2016-2017 Policy") at 1, May 17, 2017, Docket No. 1-2.) Guettler states that the policy incorrectly identifies his relationship with Justkyle because he is not doing business as Justkyle, Inc., but rather, Justkyle is a corporation and Guettler its sole employee. (Guettler Ans. ¶ 6.) At the hearing on this motion, Guettler's counsel stated that Guettler understood the policy as insuring his corporation, a claim that Midwest Family did not dispute. (Minute Entry, Mar. 13, 2018, Docket No. 44.) The policy states that, if an insured is "designated in the Declarations as:"

> a. An individual, you and your spouse are insureds, but
>    only with respect to the conduct of a business of which
>    you are the sole owner. . . .

> d. An organization other than a partnership, joint venture, or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

(2015-2016 Policy at 50-51; 2016-2017 Policy at 49-50.)

The policy covers liability to a limit of $1 million per occurrence. (2015-2016 Policy at 1; 2016-2017 Policy at 1.) Section II.A of the policy states that:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking these damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply.

(2015-2016 Policy at 41; 2016-2017 Policy at 40.) The policy defines "occurrence" as "an accident," (2015-2016 Policy at 55; 2016-2017 Policy at 54), and "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property," and "[l]oss of use of tangible property that is not physically injured," (2015-2016 Policy at 55; 2016-2017 Policy at 54).

Section II.B states that the insurance does not apply to certain enumerated exclusions. (2015-2016 Policy at 43; 2016-2017 Policy at 42). An endorsement adds an asbestos exclusion stating that the insurance does not apply to:

> (1) "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of asbestos at any time. . . .

>     (3) Any loss, cost or expense arising out of any:
>
>        (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of asbestos; or
>
>        (b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, asbestos. . . .
>
>     (5) "Property damage" arising in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, asbestos.

(2015-2016 Policy at 75; 2016-2017 Policy at 73.)

Arguing that the property damage alleged in the underlying action arises from the alleged "discharge" of asbestos or the alleged "existence of, or presence of," asbestos in the Grutzner home, Midwest Family seeks a determination that it is under no obligation to defend or indemnify Justkyle for any claims, injuries, or damages alleged by M.A. Peterson, and an award of costs and disbursements incurred while defending Justkyle under a reservation of rights. (Compl.)

Justkyle filed a motion to stay this action pending resolution of the state case, which was denied by United States Magistrate Judge Becky R. Thorson. (Order at 9, Jan. 30, 2018, Docket No. 42.) On July 17, the state court granted summary judgment in the underlying action to JustKyle and UMR Geothermal and, on some claims, to M.A. Peterson. (*See* Letter, July 18, 2018, Docket No. 46.) Now before the Court is Midwest Family's Motion for Summary Judgment. (Mot. for Summ. J., Jan. 4, 2018, Docket No. 30.)

# DISCUSSION

## I. STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the lawsuit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment is appropriate if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "To defeat a motion for summary judgment, a party may not rest upon allegations, but must produce probative evidence sufficient to demonstrate a genuine issue [of material fact] for trial." *Davenport v. Univ. of Ark. Bd. of Trs.*, 553 F.3d 1110, 1113 (8th Cir. 2009).

"[I]nterpretation and construction of insurance policies is a matter of law, and therefore, such cases are particularly amenable to summary judgment." *John Deere Ins. Co. v. Shamrock Indus., Inc.*, 929 F.2d 413, 417 (8th Cir. 1991).

## II. JURISDICTION

As a preliminary matter, the Court must determine whether Guettler is properly a party to this case. Guettler argues that he is not directly involved in "a case of actual controversy" resolvable by declaratory judgment, 28 U.S.C. § 2201, because he was not named in the underlying state-court action and he has not asked Midwest Family to defend or indemnify him. As such, he argues that Midwest Family does not have standing to name him as a defendant here.

It is true that Midwest Family would not have standing to bring an action against just Guettler because the underlying action named just Justkyle. But Midwest Family does have standing to bring this action against Justkyle, which was named in the underlying action and is covered by the policy at least generally, if not in the particulars at issue here.[1] Midwest Family joined Guettler to its action against Justkyle in the belief that he is an indispensable party, both because he is a named insured and because the Court's decision will affect his rights (because Justkyle is really just him). The Court need not determine whether Guettler is indispensable under Federal Rule of Civil Procedure 19 because Midwest Family named him as a defendant. *See Arch Ins. Co. v. Harleysville Worcester Ins. Co.*, 56 F. Supp. 3d 576, 583 (S.D.N.Y. 2014). The question is therefore not whether there is standing, but whether permissive joinder under Federal Rule of Civil Procedure 20 is proper.

---

[1] Justkyle and Guettler believe Justkyle to be a named insured – a claim that Midwest Family does not appear to dispute. Either way, it is covered through Guettler because it is a "business of which [he is] the sole owner." (2015-2016 Policy at 50; 2016-2017 Policy at 49.)

The purpose of Rule 20 "is to promote trial convenience and expedite the final determination of disputes thereby preventing multiple lawsuits." *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1332 (8th Cir. 1974). Defendants may be permissively joined in a single action when:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). The transaction or occurrence requirement "is not a rigid test and is meant to be 'read as broadly as possible whenever doing so is likely to promote judicial economy.'" *In re Prempro Prod. Liab. Litig.*, 591 F.3d 613, 622 (8th Cir. 2010) (quoting 7 Charles A. Wright et al., *Federal Practice and Procedure*, § 1653, at 415 (3d ed. 2001)). "[A]ll 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence. . . . Absolute identity of all events is unnecessary." *Id.* (quoting *Mosley*, 497 F.2d at 1333).

Here, the claim against both Justkyle and Guettler is for declaratory judgment that Midwest Family is not obligated to defend or indemnify Justkyle in the underlying action. Because most questions of law and virtually all questions of fact are common to both defendants, the sole question is whether the "same transaction" test should consider only whether a party was named in the underlying action or whether it should look to the broader circumstances. Consistent with the purposes of Rule 20 and the "logically related" test, the answer is the latter. *See Arch Ins. Co.*, 56 F. Supp. 3d at 583 (finding permissive joinder

proper when counterclaim "ar[ose] out of the same series of events" and resolution "necessarily involve[d] common questions of law and fact"); *Bancroft Life & Cas. ICC, Ltd. v. FFD Res. II, LLC*, 884 F. Supp. 2d 535, 555 (S.D. Tex. 2012) (finding permissive joinder improper when claims "d[id] not arise out of the same transactions and occurrences nor share common questions of law or fact"). Even though Midwest Family is seeking a determination only as to its obligations to Justkyle, Gruettler (the company's owner, sole employee, and coinsured) is at the heart of the series of events giving rise to potential liability.[2] As such, joinder was proper.

## III. DUTY TO DEFEND

The Court must decide whether Midwest Family is obligated by contract to defend Justkyle in the underlying action.[3] A federal court exercising diversity jurisdiction construes insurance contracts in accordance with state law. *Langley v. Allstate Ins. Co.*, 995 F.2d 841, 844 (8th Cir. 1993). The parties agree that Minnesota law governs here.

### A. Legal Background

"The duty to defend is broader than the duty to indemnify in three ways: (1) the duty to defend extends to every claim that 'arguably' falls within the scope of coverage;

---

[2] That logical relation also suggests that M.A. Peterson may be able to sue Gruettler in the future, creating a risk of inconsistent obligations for Midwest Family. Although the Court need not decide whether this risk is sufficient to make Guettler an indispensable party, it supports the conclusion that permissive joinder was appropriate.

[3] Because the parties have not separately briefed whether Midwest Family would be obligated to indemnify Justkyle in the event it is held liable – and because liability is quite unlikely given the state court's summary-judgment grant – the Court will not decide that now.

(2) the duty to defend one claim creates a duty to defend all claims; and (3) the duty to defend exists regardless of the merits of the underlying claims." *Wooddale Builders, Inc. v. Md. Cas. Co.*, 722 N.W.2d 283, 302 (Minn. 2006). Thus, the insurer "has the burden of establishing that all parts of the cause of action fall clearly outside the scope of coverage." *Metro. Prop. & Cas. Ins. Co. v. Miller*, 589 N.W.2d 297, 299 (Minn. 1999). "If any part [of a cause of action] is arguably within the scope of coverage, the insurer should defend, reserving its right to contest coverage based on facts developed at trial on the merits." *Farmers & Merchants State Bank of Pierz v. St. Paul Fire & Marine Ins. Co.*, 242 N.W.2d 840, 843 (Minn. 1976). "[A] court will compare the allegations in the complaint in the underlying action with the relevant language in the insurance policy." *Meadowbrook, Inc. v. Tower Ins. Co.*, 559 N.W.2d 411, 415 (Minn. 1997).

"General principles of contract interpretation apply to insurance policies." *Lobeck v. State Farm Mut. Auto. Ins. Co.*, 582 N.W.2d 246, 249 (Minn. 1998). "When the language of an insurance contract is unambiguous, it must be given its plain and ordinary meaning." *Thommes v. Milwaukee Ins. Co.*, 641 N.W.2d 877, 880 (Minn. 2002). But "[b]ecause most insurance policies are presented as preprinted forms, which a potential insured must usually accept or reject as a whole, ambiguities in a policy are generally resolved in favor of the insured." *Id.* (quoting *Nathe Bros. v. Am. Nat'l Fire Ins. Co.*, 615 N.W.2d 341, 344 (Minn. 2000)). "The reviewing court may not, however, read an ambiguity into the plain language of an insurance contract." *Hubred v. Control Data Corp.*, 442 N.W.2d 308, 310 (Minn. 1989).

"Exclusions contained in an insurance policy are as much a part of the insurance contract as any other part, and must be given the same consideration in determining what the policy covers." *Thommes*, 641 N.W.2d at 880. "While the insured bears the initial burden of demonstrating coverage, the insurer carries the burden of establishing the applicability of exclusions." *Travelers Indem. Co. v. Bloomington Steel & Supply Co.*, 718 N.W.2d 888, 894 (Minn. 2006). "Insurance contract exclusions are construed narrowly and strictly against the insurer, and, like coverage, in accordance with the expectations of the insured." *Id.* (citations omitted).

### B. Application

The Court must resolve two issues: first, whether Justkyle has made out a prima facie case of coverage under the policy; and second, whether Midwest Family has shown that the asbestos exclusion applies such that all parts of each cause of action fall clearly outside the policy's scope of coverage.

#### 1. Coverage

It is undisputed that the policy covers bodily injury and property damage caused by an "occurrence," which is defined as an "accident." (2015-2016 Policy at 41, 55; 2016-2017 Policy at 40, 54.) Under Minnesota law, an "accident" is "an unexpected, unforeseen, or undesigned happening or consequence." *Am. Family Ins. Co. v. Walser*, 628 N.W.2d 605, 611 (Minn. 2001) (quoting *Hauenstein v. St. Paul-Mercury Indem. Co.*, 65 N.W.2d 122, 126 (Minn. 1954)). "[W]here there is no intent to injure, the incident is an accident, even if the conduct itself was intentional." *Id.* at 612. The Grutzners' complaint – and, in

turn, M.A. Peterson's – alleges property damage[4] caused by, among other things, negligence.[5] (Grutzner Compl. ¶¶ 63-67; M.A. Peterson Compl. ¶ 24.) Thus, Justkyle has met its burden of establishing a prima facie case of coverage sufficient to shift the burden to Midwest Family to prove that an exclusion applies.[6]

### 2. Exclusion

Midwest Family argues that the plain language of two sections of the asbestos exclusion bar coverage because "the underlying action and claims against Justkyle pertain to only the asbestos-related incident in the Grutzners' home." (Pl.'s Supp. Mem. at 10, Jan. 4, 2018, Docket No. 32.) Midwest Family states that that "the property damage at issue in the underlying action is due to the alleged or actual discharge, existence of, or presence of asbestos." (Pl.'s Reply Mem. at 4, Jan. 22, 2018, Docket No. 41.) If Midwest Family were right about the nature of the underlying action, this matter would be open-and-shut. But, as the state court's decision on summary judgment illustrates, it is not that simple.

---

[4] The policy defines "property damage" to include any injury to tangible property, even the loss of use of tangible property that is not physically injured. Justkyle described the alleged harm as economic in nature because its primary cause was M.A. Peterson's alleged discovery and concealment of the asbestos rather than the asbestos itself. Nonetheless, the parties agree that the injury alleged is "property damage" under the terms of the policy.

[5] That the state court also granted summary judgment to M.A. Peterson as to the negligence claim is of no moment here because the question is whether Midwest Family has a duty to defend Justkyle against that claim and others, not whether it has a duty to indemnify.

[6] Midwest Family suggests that a policy term limiting coverage to property damage "to which this insurance applies" operates to eliminate the burden shift, rather than merely restating the obvious. Not so. *See Bloomington Steel*, 718 N.W.2d at 894 (interpreting an identical term).

True, sometimes an asbestos case is just an asbestos case. Midwest Family argues that the Section 1 exclusion of "'property damage' which would not have occurred in whole or in part, but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of asbestos" applies to limit coverage for damage resulting from Justkyle's alleged disturbance of the asbestos. Justkyle concedes that Section 1 excludes coverage for any damage the Grutzners sustained because of the release of asbestos. (Def.'s Opp. Mem. at 3-4, Jan. 16, 2018, Docket No. 39.) And, because the plain language of the provision also covers mere allegations, it would also apply to exclude coverage of any damage – hypothetical or otherwise – related to Guettler's alleged disturbance of the asbestos. Key to this case is the fact that those allegations are some, but not all, of the allegations for which Justkyle was granted summary judgment.

Sometimes a would-be asbestos case holds more than meets the eye. M.A. Peterson's claims for indemnification and contribution fully incorporate the Grutzners' claims against M.A. Peterson. Midwest Family argues that the Section 5 exclusion of "'[p]roperty damage' arising in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, asbestos" applies to limit coverage for these broader claims as well. The "existence of, or presence of" asbestos is not in dispute, but what is in dispute is whether the property damage for which M.A. Peterson seeks indemnification and contribution – coextensive with the property damage alleged by the Grutzners – is "arising in whole or in part" out of the asbestos.

"[E]ach case presenting such a question must, to a great degree, turn on the particular facts presented." *Associated Indep. Dealers, Inc. v. Mut. Serv. Ins. Cos.*, 229

N.W.2d 516, 518 (Minn. 1975). "The phrase 'arising out of' is broadly construed," and "generally means 'originating from,' 'growing out of,' or 'flowing from.'" *Dougherty v. State Farm Mut. Ins. Co.*, 699 N.W.2d 741, 744 (Minn. 2005) (quoting *Associated Indep. Dealers, Inc.*, 229 N.W.2d at 518-19). A sufficient causal connection is established if "the injury is a natural and reasonable incident or consequence." *Id*. at 743 (quoting *N. River Ins. Co. v. Dairyland Ins. Co.*, 346 N.W.2d 109, 114 (Minn. 1984)). However, a causal link may be broken by "an act of independent significance." *Id.* "The appropriate focus must be on the liability-creating conduct." *Zimmerman v. Safeco Ins. Co. of Am.*, 605 N.W.2d 727, 731 (Minn. 2000).

Here, the existence or presence of asbestos in the Grutzner home, without more, would not have created liability for either M.A. Peterson or Justkyle. The liability-creating conduct alleged in the Grutzner complaint (and incorporated in full, however nonsensically, by M.A. Peterson's third-party complaint) is that M.A. Peterson disturbed **and concealed** the asbestos. To be sure, both disturbance and concealment of asbestos require the existence or presence of asbestos. But only one – disturbance – may be said to be a natural and reasonable consequence of the existence or presence of asbestos. Concealment, by contrast, is an act of independent significance. The underlying claim could have omitted details about the asbestos and still alleged that M.A. Peterson's concealment of a hazardous material was negligent, fraudulent, and in breach of two contracts. At least with regard to the alleged concealment, Midwest Family arguably "stretches the 'arising out of' language too far." *See W3i Mobile, LLC v. Westchester Fire Ins. Co.*, No. 08-6370, 2009 WL 3379198, at *3 (D. Minn. Oct. 20, 2009) (holding that

there is no causal connection between mobile content and allegations of unauthorized billing for the mobile content).[7]

Comparing Section 5 of the asbestos exclusion to Section 3 confirms this conclusion. While the former is focused on property damage caused in whole or part by asbestos, the latter excludes coverage for "**[a]ny** loss, cost or expense arising out of **any** . . . [c]laim or 'suit' by or on behalf of a governmental authority" involving asbestos. (2015-2016 Policy at 75; 2016-2017 Policy at 73). If this broader language applied to private parties as well as governmental authorities, it would have put an insured on notice that **any** claim that at all involves asbestos – however far afield the damage alleged may be – would be excluded. *See W3i Mobile*, 2009 WL 3379198, at *4 (holding that the unauthorized billing allegations were "attributable to, directly or indirectly resulting from, in consequence of, or in any way involving" the mobile content), *aff'd*, 632 F.3d 432, 436 (8th Cir. 2011) ("At the very least, the claims 'involve' [the] mobile content.").

Midwest Family has not shown that the concealment alleged in the underlying complaints inarguably and clearly involves property damage that was a natural and reasonable consequence of the alleged existence of, or presence of, asbestos. As such, it has failed to meet its burden of showing that all parts of the underlying causes of action fall clearly outside the scope of coverage, and the Court will deny summary judgment.

---

[7] The state court appears to have drawn a similar line, granting summary judgment to M.A. Peterson on the negligence, breach of warranty, and fraud by omission counts but not the breach of contracts or breach of fiduciary duty counts.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment [Docket No. 30] is **DENIED**.

DATED: July 19, 2018                          _____s/John R. Tunheim_____
at Minneapolis, Minnesota.                  JOHN R. TUNHEIM
                                                             Chief Judge
                                             United States District Court